UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **Johnnie G. Bryant, Jr.,** )<br>  ) <br>     **Plaintiff,** ) <br>  ) <br> v.      ) <br>  ) <br> **Midland Credit Management, Inc** ) <br> **and CitiFinancial, Inc.,** ) <br>  ) <br>     **Defendants.** ) | Civil No.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

1.  This is an action brought by the Plaintiff, Johnnie G. Bryant, Jr, for actual and statutory damages, punitive damages, attorney's fees, and costs for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq,* (hereinafter "FCRA"). The Plaintiff also seeks actual and statutory damages, attorney's fees, and costs for Defendant Midland Credit Management, Inc.'s violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*, (hereinafter "FDCPA"). Additionally, the Plaintiff seeks compensatory and punitive damages for Defendant CitiFinancial, Inc.'s violations of South Carolina common law described herein.

## JURISDICTION AND VENUE

2.  This Court has Jurisdiction under 15 U.S.C. §1681p, 15 U.S.C. §1692k(d), and 28 U.S.C. §1331, §1332, and §1367.

3.  Venue is proper in the Florence Division because the Plaintiff resides in Marion

County and the Defendants transacted business in this division.

## PARTIES

4. The Plaintiff, Johnnie G. Bryant, Jr., is a resident and citizen of the State of South Carolina, Marion County, and is over the age of twenty-one (21) years. Plaintiff is a "consumer" as that term is defined in 15 U.S.C. §1692a(3).

5. Defendant Midland Credit Management, Inc. ("MCM") is a Kansas corporation with its principal place of business at 8875 Aero Dr., Suite 200, San Diego, CA 92123. Midland Credit Management, Inc. may be served with process through its registered agent for service of process, Corporation Service Company, 1703 Laurel St., Columbia, SC 29201. In all respects and at all times relevant herein, Midland Credit Management, Inc. (MCM) was doing business in the State of South Carolina. Defendant is engaged in the business of collecting consumer debts from consumers residing in South Carolina and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

6. Defendant CitiFinancial, Inc. (referred to hereinafter as "Citi") is a Maryland corporation and may be served with process through its registered agent, C T Corporation System, 2 Office Park Ct, Suite 103, Columbia, SC 29223. In all respects and at all times relevant herein, Defendant Citi was doing business in the State of South Carolina.

## FACTUAL ALLEGATIONS

7. On or about January 5, 2011, the Plaintiff received a letter from the Korn Law Firm on behalf of Defendant MCM. By and through the Korn Law Firm, Defendant MCM notified the Plaintiff that he owed $15,113.75 on a debt. The original creditor as it relates to this alleged debt was Defendant Citi.

8. On January 26, 2011, the Plaintiff sent the Korn Law Firm a certified letter in which he stated that he had never borrowed any money from Defendant Citi and disputed owing them anything. The Plaintiff went on to make known that he had gone to the CitiFinancial office in Dillon, South Carolina and shown them a copy of his signature on his Medicare card to confirm that he had not opened any account with Defendant Citi. The Plaintiff concluded his letter by requesting a copy of any and all paperwork that showed his signature and that he had borrowed any money from Defendant Citi. The return receipt was dated January 28, 2011.

9. On or about February 1, 2011, the Plaintiff received a copy of his Experian credit report. Defendants MCM and Citi were reporting negative tradelines to Experian. Specifically, Defendant MCM was reporting a collection account, past due as of January 2011. Defendant Citi reported a charged-off account, past due as of October 2009.

10. On or about February 1, 2011, the Plaintiff also received a copy of his Trans Union credit report. Defendants MCM and Citi were also both reporting negative tradelines

to Trans Union. Specifically, Defendant MCM was reporting a collection account, updated in January, 2011 with an original creditor of CitiFinancial, Inc. Defendant Citi was reporting a charged-off account, updated as of October 2009.

11. On or about February 1, 2011, the Plaintiff received a copy of his Equifax credit report. Defendant MCM was reporting a negative tradeline to Equifax. Specifically, Defendant MCM was reporting a collection account with a past due amount of $13,211.

12. On or about February 18, 2011, the Plaintiff sent Experian a dispute letter via certified mail, return receipt requested. In his dispute, the Plaintiff disputed the tradelines reported by the Defendants. The return receipt was dated February 28, 2011 and thereafter returned to the Plaintiff.

13. On or about February 18, 2011, the Plaintiff sent Trans Union a dispute letter via certified mail, return receipt requested. In his dispute, the Plaintiff disputed the tradelines reported by the Defendants. The return receipt was dated February 22, 2011 and returned to the Plaintiff thereafter.

14. On or about February 18, 2011, the Plaintiff sent Equifax a dispute letter via certified mail, return receipt requested. In his dispute, the Plaintiff disputed the tradeline being reported by Defendant MCM. The return receipt was dated February 20, 2011 and returned to the Plaintiff thereafter.

15. On or about February 26, 2011, the Plaintiff received a letter which indicated that he

had been turned down for a Sears credit card. The letter stated that the Plaintiff had been turned down due to "unfavorable credit history", "inquiries for credit", and/or "derogatory public record references".

16. On or about March 5, 2011, the Plaintiff received investigation results produced by Trans Union in response to his February 18, 2011 dispute letter. Defendant MCM was reporting a collection account and stated that it had been verified in March, 2011. Defendant Citi was reporting a charged-off account and stated that it had been verified in March, 2009.

17. On or about March 18, 2011, the Plaintiff received investigation results produced by Experian in response to his February 18, 2011 dispute letter. Defendant MCM continued to report a collection account and stated that it had been verified in March, 2011. Defendant Citi continued to report a charged-off account and stated that it had been verified in March, 2011.

18. On or about March 28, 2011, the Plaintiff sent a second certified letter, return receipt requested, to Defendant MCM's attorneys at the Korn Law Firm, P.A. In his letter, the Plaintiff stated once again that he had no information regarding the account being reported by Defendant MCM and that he had never opened the account. The Plaintiff provided the Korn Law Firm, P.A. with his name, address, and Social Security number. The return receipt was dated March 29, 2011 and returned to the Plaintiff thereafter.

19. On or about March 28, 2011, the Plaintiff sent a second dispute letter to Experian via certified mail, return receipt requested. In this dispute, the Plaintiff included a copy of his first dispute, mailed on February 18, 2011, and reiterated to Experian that the tradelines being reported by the Defendants were inaccurate and did not belong to him. The return receipt was dated March 31, 2011 and returned to the Plaintiff thereafter.

20. On or about April 8, 2011, the Plaintiff received a credit report from Experian. Defendant MCM was reporting a collection account to Experian, the tradeline indicating that it was verified in March, 2011. Defendant Citi was reporting a charged-off account to Experian, the tradeline indicating that it was verified in March, 2011.

21. On or about April 28, 2011, the Plaintiff received a letter from GE Money Bank. In its letter, GE Money Bank informed the Plaintiff that his credit limit on his Discover Sam's Card was being lowered due to negative information in his Trans Union credit report.

22. On or about May 11, 2011, the Plaintiff received a copy of his Trans Union credit report. Defendant MCM was reporting a collection account to Trans Union, updated in April, 2011. Defendant Citi was reporting a charged-off account to Trans Union, updated in March, 2009.

23. On or about July 7, 2011, the Plaintiff sent a third dispute letter to Experian via

certified mail, return receipt requested. In this dispute, the Plaintiff once again disputed the adverse accounts being reported by Defendants MCM and Citi. The return receipt was dated July 12, 2011 and returned to the Plaintiff thereafter.

24. On or about July 7, 2011, the Plaintiff sent a third dispute letter to Trans Union via certified mail, return receipt requested. In this dispute, the Plaintiff once again disputed the adverse accounts being reported by Defendants MCM and Citi. The return receipt was dated July 11, 2011.

25. On or about July 7, 2011, the Plaintiff sent a second dispute letter to Equifax via certified mail, return receipt requested. In this dispute, the Plaintiff included a copy of his February 18, 2011 dispute letter to Equifax and once again disputed the adverse account being reported by Defendant MCM. The return receipt was dated July 12, 2011 and returned to the Plaintiff thereafter.

26. On or about July 7, 2011, the Plaintiff sent a dispute letter directly to Defendant MCM via certified mail, return receipt requested. In this dispute, the Plaintiff stated that the account being reported by Defendant MCM was not his and was not opened by him. The Plaintiff concluded his letter by requesting that Defendant MCM stop reporting this account as belonging to him. The return receipt was dated July 11, 2011 and returned to the Plaintiff thereafter.

27. On or about July 19, 2011, the Plaintiff received investigation results prepared by Experian. In spite of the Plaintiff's continuous disputes, Defendants MCM and Citi

continued to report adverse accounts to Experian.

28. On or about August 24, 2011, the Plaintiff received investigation results prepared by Trans Union. In spite of his continuous disputes, Defendant MCM and Citi continued to report adverse accounts to Trans Union.

29. On or about September 28, 2011, the Plaintiff received a letter from his insurance provider, South Carolina Farm Bureau Insurance Companies. In this letter, the Plaintiff was informed by his insurer that his premium had been increased due to negative information in his credit reports.

30. Throughout this process, in addition to continuously reporting this account, Defendant MCM was also calling the Plaintiff in an attempt to collect on an alleged debt in spite of its knowledge that the Plaintiff disputed opening this account and disputed that this account belonged to him.

### COUNT ONE
Fair Credit Reporting Act

31. The Plaintiff adopts the averments and allegations of paragraphs 7 through 32 hereinbefore as if fully set forth herein.

32. Defendants negligently violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the information said Defendants had provided to a consumer reporting agency.

33. Defendants negligently violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

34. Defendants negligently violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by the Defendants to consumer reporting agencies.

35. Defendants negligently violated 15 U.S.C. §1681s-2(b)(1)(c) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to consumer reporting agencies.

36. Defendants negligently violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Defendants' account was inaccurate, incomplete, false, and misleading.

37. As a result of the Defendants' violations set forth above, the Plaintiff suffered increased credit costs, harm to his credit reputation, was forced to endure collection letters and calls from Defendants, was made to suffer humiliation, anxiety, loss of sleep, anger, fright, physical pain and illness and mental anguish, as well as damages for attorney fees, certified mail expenses, and other out of pocket losses.

## COUNT TWO
Fair Credit Reporting Act

38. The Plaintiff adopts the averments and allegations of paragraphs 7 through 37 hereinbefore as if fully set forth herein.

39. Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

40. Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

42. Defendants willfully violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendants to a consumer reporting agency.

43. Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(c) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency.

44. Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the accounts the subject of this action was inaccurate, incomplete, false, and misleading.

45. As a result of the Defendants' violations set forth above, the Plaintiff suffered increased credit costs, harm to his credit reputation, was forced to endure collection letters and calls from Defendants, was made to suffer humiliation, anxiety, loss of sleep, anger, fright, physical pain and illness and mental anguish, as well as damages for attorney fees, certified mail expenses, and other out of pocket losses.

## COUNT THREE
Fair Debt Collection Practices Act

46. The Plaintiff adopts the averments and allegations of paragraphs 7 through 45 hereinbefore as if fully set forth herein.

47. Defendant MCM has engaged in collection activities and practices in violation of the

       Fair Debt Collection Practices Act (hereinafter referred to as "FDCPA") with respect to the Plaintiff and his alleged consumer debt.

48. Defendant MCM has violated §1682d(5) by causing a telephone to ring repeatedly or continuously with the intent to harass, annoy, or abuse the Plaintiff in an effort to collect an alleged debt.

49. Defendant MCM has violated §1692e(8) during the past 12 months by communicating credit information about the Plaintiff which Defendant MCM knew or should have known was false.

50. In violation of 15 U.S.C. §1692g, Defendant MCM failed to validate the Plaintiff's disputed debt, in writing, after receiving a written dispute to said debt from the Plaintiff within the thirty day period after Defendant MCM's January 5, 2011 letter.

51. In violation of 15 U.S.C. §1692g(b), after receiving written notification from the Plaintiff that the debt was disputed, Defendant MCM failed to cease collection of the debt, or any disputed portion thereof. Specifically, the Defendant MCM continued to report the disputed debt on the Plaintiff's credit reports in an effort to collect the debt.

52. As a proximate result of Defendant MCM's actions, the Plaintiff was caused to suffer actual damages for damage to his credit and credit reputation, increased credit costs, denial of credit, worry, humiliation, fear, loss of sleep, anxiety, nervousness, frustration, physical sickness, physical pain and mental anguish.

## COUNT FOUR
Defamation

51. The Plaintiff adopts the averments and allegations of paragraphs 7 through 52 hereinbefore as if fully set forth herein.

52. Defendant Citi willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding the Plaintiff to third parties and the public at large. Specifically, Citi published and communicated fale and defamatory statements regarding the Plaintiff to MCM, and other third parites. Said statements subjected the Plaintiff to collection activities by MCM, increased credit costs, the denial of credit by third parties and harmed the Plaintiff's reputation.

53. Said false and defamatory statements have harmed the reputation of the Plaintiff and/or deterred third persons from associating with the Plaintiff.

54. Defendant Citi communicated to Defendant MCM, and other third parties, false information concerning the Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning the Plaintiff.

55. Said communications were made to Defendant MCM, to their agents and employees, and to the public at large.

56. Said communications were false in that Plaintiff was not indebted to Defendant Citi and Plaintiff did not owe any balance on said alleged account.

57. At the time said communications were made, Defendant Citi knew, or should have known, the falsity of the communications or recklessly disregarded the potential

inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity.

58. As a result of the intentional communications to third parties of the false information, the Plaintiff was caused to suffer injury to her reputation in the eyes of his community and the public, and/or was subjected to ridicule.

59. Said communications were oral and written.

60. As a proximate consequence of said defamation, libel and slander, the Plaintiff was caused to endure collection activities by MCM, have negative credit reports, held up to public ridicule or shame, denied credit, suffered increased credit costs, and made to suffer humiliation, anxiety, loss of sleep, anger, fright, physical pain and illness and mental anguish for which he claims compensatory and punitive damages.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendant for the following:

A. Actual and statutory damages from Defendants pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1).

B. Punitive damages from Defendants pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendants pursuant to 15 U.S.C. §1681n(a)(3);

D. Actual damages for Defendant MCM's violations of the FDCPA;

E.      Statutory damages of $1,000 for Defendant MCM's violations of the FDCPA pursuant to 15 U.S.C. §1692k;

F.      Costs and reasonable attorney's fees for Defendant MCM's violations of the FDCPA pursuant to 15 U.S.C. § 1692k;

G.      Compensatory and punitive damages in excess of the jurisdictional requirements of this Court, from Defendant Citi on Plaintiff's State law claims in an amount to be determined by a jury; and

H.      For such other and further relief as the Court may deem just and proper.

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Penny Hays Cauley

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Midland Credit Management, Inc.
c/o Corporation Service Company - Registered Agent
1703 Laurel St.
Columbia, SC 29201

CitiFinancial, Inc.
c/o  C T Corporation System - Registered Agent
2 Office Park Ct, Suite 103
Columbia, SC 29223